IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Vantage, Inc., | ) | |
| | ) | C.A. No. 6:08-2765-HMH |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Vantage Travel Service, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Vantage Travel Service, Inc.'s ("Vantage Travel")

motion for summary judgment on Vantage, Inc.'s ("Vantage") causes of action for unfair

competition under the Lanham Act, 15 U.S.C. § 1125(a); common law trademark infringement

and unfair competition; and violation of the South Carolina Unfair Trade Practices Act

("SCUTPA"). For the reasons below, the court grants in part and denies in part Vantage

Travel's motion for summary judgment.

## I. FACTUAL & PROCEDURAL BACKGROUND

This case arises from the parties' dispute over the trademark "VANTAGE" (hereinafter

"VANTAGE Mark"). Vantage is a travel agency specializing in custom trips to various

international locations. (Def. Mem. Supp. Summ. J. Ex. B (Vicario Dep. at 90-91).) The

majority of Vantage's customers are travel agents who are paid a commission for booking trips

through Vantage. (Id. Ex. B (Vicario Dep. at 13, 15).) However, Vantage also works directly

with travelers. Renato Vicario ("Vicario") is the owner of Vantage. (Id. Ex. B (Vicario Dep. at

66).) Vantage alleges that Vicario first used the Vantage Mark in 1976 in Europe in connection

with his travel service.  (Pl. Mem. Opp'n Summ. J. 2.)  Vantage was incorporated on January 14, 1982, in South Carolina and asserts that it has continually used the VANTAGE Mark since that time.  (Id. Ex. 3 (Interrogatory Resp. 2).)  Vicario licensed the VANTAGE Mark to Vantage on May 13, 1982.  (Def. Mem. Supp. Summ. J. Ex. A (License).)  Vantage has used several variations of the VANTAGE Mark since its inception, including "VANTAGE TRAVEL," "VANTAGE ADVENTURES," and beginning in 2006, "VANTAGE WORLD TRAVEL."  (Id. Ex. B (Vicario Dep. 54, 61, 63).); (Pl. Mem. Opp'n Summ. J. 3.)  Vantage's website which was created in April 1996 is located at www.travelvantage.com.  (Pl. Mem. Opp'n Summ. J. 3.)

Vantage Travel was incorporated on September 27, 1983.  (Id. Ex. 2 (Vantage Travel's Resp. Interrogatory 1).)  Vantage Travel sells prepackaged cruises directly to travelers.  (Def. Mem. Supp. Summ. J. Ex. B (Vicario Dep. at 90).)  Vantage Travel does not utilize travel agents as part of their business.  Vantage Travel has used the VANTAGE Mark since 1983 and in 1995 began using the mark, "VANTAGE DELUXE WORLD TRAVEL."  (Pl. Mem. Opp'n Summ. J. Ex. 2 (Vantage Travel's Resp. Interrogatory 1).)  Vantage Travel's website is located at www.vantagetravel.com.  (Id. 12.)

In 2005, Vantage learned of Vantage Travel through misdirected inquiries from travel agents.  (Id. Ex. 1 (Vicario Dep. 89-90).)  Vantage alleges that since that time it has experienced a significant drop in business from travel agents.  (Id. Ex. 1 (Vicario Dep. 18-19).)  Vicario alleges that he "learned that there were travel agents who did not want to do business with the Plaintiff due to their confusion over the identity of Vantage, Inc. and Vantage Travel Service, Inc." because the agents "mistakenly assumed that Vantage, Inc. . . . does not pay commission to

travel agents." (Id. 4-5.)  Vantage also alleges that it has received misdirected inquiries from travelers.  (Pl. Mem. Opp'n Summ. J. Ex. 1 (Vicario Dep. 91-95).)

Vantage filed an application for federal registration of the VANTAGE mark with the United States Patent and Trademark Office ("USPTO") on February 8, 2006.  Vantage Travel filed a Notice of Opposition to registration on July 2, 2008.  Vantage filed the instant suit on August 6, 2008, and served Vantage Travel on January 30, 2009.  Vantage Travel filed a trademark infringement action in the United States District Court for the District of Massachusetts on February 18, 2009 ("Massachusetts Action").  The Massachusetts Action has been stayed pending the outcome of this action.  An amended complaint was filed April 1, 2009. The instant motion was filed February 26, 2010.  Vantage's memorandum in opposition was filed March 15, 2010.  Vantage Travel filed a reply on March 23, 2010.  Vantage filed a sur reply on March 24, 2010.  This matter is now ripe for consideration.

## II. DISCUSSION OF THE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in the non-

movant's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248.

Moreover, "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

## B.  Likelihood of Confusion

Vantage Travel moves for summary judgment on Vantage's claims alleging that Vantage cannot show likelihood of confusion results from Vantage Travel's use of the VANTAGE Mark.  In order for Vantage to prevail on its claims for unfair competition under the Lanham Act pursuant to 15 U.S.C. § 1125(a), common law trademark infringement and unfair competition, and SCUTPA violation, Vantage must show likelihood of confusion.  Lyons Partnership, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 804 (4th Cir. 2001) ("A plaintiff asserting an infringement claim under the Lanham Act must prove that it has a valid, protectable trademark and that the defendant is infringing its mark by creating confusion, or a likelihood thereof, by causing mistake, or by deceiving as to the attributes of its mark."); Petro Shopping Center L.P. v. James River Petroleum, Civil Action No. 3:96CV530, 1997 WL 187335, at *1 (E.D. Va. Jan. 17, 1997) ("An action for trademark infringement and unfair competition under the Lanham Act involves the same elements as actions under common law trademark infringement and unfair competition."); Johnson v. Sosebee, 397 F. Supp. 2d 706, 712 (D.S.C.

4

2005) ("The standard for liability for trademark infringement under the South Carolina Unfair Trade Practices Act . . . like that of the Lanham Act, is likelihood of consumer confusion.").

Vantage Travel argues that it is entitled to summary judgment because there is no likelihood of confusion among consumers. A likelihood of confusion exists if "the defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question." CareFirst of Maryland, Inc. v. First Care, P.C., 434 F.3d 263, 267 (4th Cir. 2006) (internal quotation marks omitted). In assessing whether such confusion exists, the court must "look to how the two parties actually use their marks in the marketplace to determine whether the defendant's use is likely to cause confusion." George & Co. LLC v. Imagination Entertainment Ltd., 575 F.3d 383, 393 (4th Cir. 2009).

There are seven factors that the court considers to determine whether there is a likelihood of confusion: (1) the strength or distinctiveness of the plaintiff's mark, (2) the similarity between the two marks, (3) the similarity of the goods or services the marks identify, (4) the similarity of the facilities the parties use in their business, (5) the similarity in the advertising conducted by the parties, (6) the defendant's intent, and (7) actual confusion between the two marks by people in the marketplace. See Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir. 1984). The last factor, actual confusion, is the most significant. Resorts of Pinehurst, Inc. v. Pinehurst Nat. Corp., 148 F.3d 417, 423 (4th Cir. 1998) (noting that "the best evidence of likely confusion is actual confusion."). "Not all of these factors are of equal importance, nor are they always relevant in any given case." CareFirst of Maryland, Inc., 434 F.3d at 268 (internal quotation marks omitted).

In its motion for summary judgment, Vantage Travel argues that Vantage's claims fail because there is no likelihood of confusion.  Whether the VANTAGE Mark is likely to cause confusion to the "ordinary consumer" such that Vantage has rights which prevail over Vantage Travel's is an "inherently factual" determination which is "particularly amenable to resolution by a jury."  Anheuser-Busch, Inc. v. L. & L. Wings, Inc., 962 F.2d 316, 318  (4th Cir. 1992).  Likelihood of confusion is "frequently a fairly disputed issue of fact on which reasonable minds may differ, and has long been recognized to be a matter of varying human reactions to situations incapable of exact appraisement."  Id. (internal citation and quotation marks omitted).

### 1. Strength of the Mark

"Generally, the stronger the mark, the greater the likelihood that consumers will be confused by competing uses of the mark.  Strength consists of both conceptual strength and commercial strength."  George & Co. LLC, 575 F.3d at 393.  "A mark's conceptual strength is determined in part by its placement into one of four categories of distinctiveness:  (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful."  Id. at 393-94.  Suggestive, fanciful, and arbitrary marks are "inherently distinctive."  Id.  Vantage alleges that the VANTAGE Mark is suggestive.  "Suggestive marks . . . do not describe a product's features but merely suggests them.  In other words, the exercise of some imagination is required to associate a suggestive mark with the product.  Examples of suggestive marks are 'Coppertone®, Orange Crush®, and Playboy®.'"  George & Co. LLC, 575 F.3d at 394 (internal citations omitted).  The "strength of a mark ultimately depends on the degree to which the designation is associated by prospective purchasers with a particular source."  Petro Stopping Centers, L.P. v. James River Petroleum, Inc., 130 F.3d 88, 93 (4th Cir. 1997).  Vantage alleges that the VANTAGE Mark suggests a

6

superior travel experience.  There is little evidence presented by the parties regarding the commercial strength of the VANTAGE Mark.

Genuine issues of material fact remain in dispute concerning the strength of the mark. Vantage Travel raises several arguments that the VANTAGE Mark is weak due to Vantage's use of different variations of the VANTAGE Mark and other competitors' utilization of the VANTAGE Mark.  (Def. Mem. Supp. Summ. J. 8-13.)  Vicario testified that he was unaware of any other entity utilizing the VANTAGE Mark besides Vantage Travel.  (Id. Ex. A (Vicario Dep. at 64).)  Further, Vantage argues that the examples cited by Vantage Travel are distinct and dissimilar from the use of the VANTAGE Mark by the parties in this case.  (Pl. Mem. Opp'n Summ. J. 10-11.)

### 2.  Similarity Between the Parties' Marks

In determining similarity, the "focus [is] on whether there exists a similarity in sight, sound, and meaning which would result in confusion."  George & Co. LLC, 575 F.3d at 396. The VANTAGE Mark utilized by the parties is similar.  The parties have both used the VANTAGE Mark singularly.  In addition, Vantage Travel's mark "VANTAGE DELUXE WORLD TRAVEL" is similar to Vantage's mark "VANTAGE WORLD TRAVEL".  These two marks with the exception of the word "deluxe" are identical.  Further, Vantage's other names such as "VANTAGE ADVENTURES" utilize the VANTAGE Mark.

### 3.  Similarity in the Parties' Services and Facilities

Both Vantage and Vantage Travel are in the travel industry and sell trips to consumers. Vantage Travel sells prepackaged cruise vacations on ships owned by Vantage Travel.  Vantage sells custom trips to different locations and provides services such as "book[ing] airline and

hotel reservations, transfer services, city tours, transportation . . . , ferry tickets, cruises, entrance to local museums and other points of attraction, and restaurant reservations." (Pl. Mem. Opp'n Summ. J. 2.) Vantage Travel alleges that the parties serve distinct markets in that Vantage Travel targets the traveler directly and Vantage targets travel agents. However, Vantage alleges that it also services travelers directly and their business is not confined to marketing to travel agents. Vicario testified that with the use of the internet Vantage's direct sales increased such that by 2005, twenty to thirty percent of sales were direct sales to travelers. (Id. Ex. 1 (Vicario Dep. at 18).) There is evidence of overlap in the services offered by the parties.

### 4.  Similar Advertising Methods

Vantage Travel alleges that the parties' advertising and marketing is distinct because Vantage "target[s] travel agencies and the Defendant directly target[s] the end traveler." (Def. Mem. Supp. Summ. J. 15.). Vantage primarily directs its advertising to travel agents throughout the world through direct mailings and contact. As noted above, Vantage also submits that it advertises to the travelers directly. (Pl. Mem. Opp'n Summ. J. Ex. 1 (Vicario Dep. at 18).) However, Vicario testified that Vantage has "never really directly advertised to individuals." (Id. Ex. 1 (Vicario Dep. at 20).) Both parties advertise their travel services via the internet, which is accessible to the general public.

### 5.  Defendant's Intent

There is no evidence that Vantage Travel intended to cause confusion or acted in bad faith.

### 6. Actual Confusion

Vantage has provided evidence that there have been several instances of customer confusion. Evidence of actual confusion is "'often paramount' in the likelihood of confusion analysis." George & Co. LLC, 575 F.3d at 393. "Actual confusion can be demonstrated by both anecdotal and survey evidence. Evidence of only a small number of instances of actual confusion may be dismissed as *de minimis*." Id. at 398 (internal citations omitted). Vicario testified that he has received misdirected inquiries. In addition, Vantage Travel has produced a misdirected email from one of Vantage's customers. (Def. Mem. Supp. Summ. J Ex 8 (Letter).) It is unclear from the evidence presented whether these instances of actual confusion are "de minimis."

In sum, the court has considered all of the factors and finds that there are genuine issues of material fact with respect to likelihood of confusion. The court finds that the determination of likelihood of confusion in this case is "particularly amenable to resolution by a jury." Anheuser-Busch, Inc., 962 F.2d at 318 (4th Cir. 1992). Thus, the court denies Vantage Travel's motion for summary judgment on this basis.

### C. Damages

The Lanham Act entitles a prevailing plaintiff to damages, subject to equitable principles, including: (1) defendant's profits, (2) plaintiff's damages, and (3) the costs of the action. 15 U.S.C. § 1117(a). A "finding of actual losses is [not] a prerequisite to an award of damages." Shell Oil Co. v. Commercial Petroleum, Inc., 928 F.2d 104, 108 (4th Cir. 1991). "[E]quitable damages, as measured by the infringer's profits, can be awarded to the trademark owner without proof of actual loss." Id. In addition, a "plaintiff seeking relief under the Lanham Act is not

9

required to prove the amount of its damages with exacting specificity." PBM Products, Inc. v. Mead Johnson & Co., 174 F. Supp. 2d 424, 430 (E.D. Va. 2001). Vicario testified that he observed a "deep drop" in business from travel agents beginning in the mid-2000s. (Pl. Mem. Opp'n Summ. J. Ex. 1 (Vicario Dep. 18-19).) Around that time, Vicario learned of the existence of Vantage Travel as a result of misdirected inquiries from travelers and travel agents. (Id. Ex. 1 (Vicario Dep. 89-92).) Vantage submits that it pays commissions to travel agents and Vantage Travel does not. (Id. Ex. 1 (Vicario Dep. 92).) Vicario testified that he learned that travel agents did not want to conduct business with Vantage because of the confusion. (Id. Ex. 1 (Vicario Dep. 92).) Based on the foregoing, Vantage has provided sufficient circumstantial evidence of damages. Further, the parties are still engaged in discovery concerning any profits Vantage Travel received as a result of the alleged infringement. (Pl. Sur Reply, generally.) Therefore, the court denies Vantage Travel's motion for summary judgment on this basis.

### D.  Laches

The court considers the following questions in evaluating a laches argument in a trademark case: "(1) whether the owner of the mark knew of the infringing use; (2) whether the owner's delay in challenging the infringement of the mark was inexcusable or unreasonable; and (3) whether the infringing user was unduly prejudiced by the owner's delay." What-A-Burger of Virginia, Inc. v. Whataburger, Inc. of Corpus Christi, Texas, 357 F.3d 441, 448-49 (4th Cir. 2004).

> Because the Lanham Act does not include a limitations period, courts use the doctrine of laches to address the inequities created by a trademark owner who, despite having a colorable infringement claim, allows a competitor to develop its products around the mark and expand its business, only then to lower the litigation boom.

10

Id. at 449.  "[T]he key question, for purposes of estoppel by laches, is not simply whether there has been some delay, but whether that delay was *unreasonable*."  Id.  "[U]nreasonable delay begins at the time at which the [trademark owner] knows or should know she has a provable claim for infringement."  Id. (internal quotation marks omitted).

Taking the facts in the light most favorable to Vantage, Vicario became aware of Vantage Travel in or around 2005 or 2006 after receiving misdirected inquiries from travel agents.  (Pl. Mem. Opp'n Summ. J. Ex. 1 (Vicario Dep. 89-90).)  Vantage filed the instant suit on August 6, 2008.  However, Vantage filed an application to register the VANTAGE Mark on February 8, 2006.  The USPTO published Vantage's registration of the VANTAGE Mark on January 8, 2008.  Vantage Travel filed an opposition to Vantage's application to register on July 2, 2008. (Id. Ex. 5 (Notice of Opposition).)  Vantage Travel was certainly on notice that it was Vantage's position that it had superior rights to the VANTAGE Mark at the latest in January 2008, when the USPTO published Vantage's registration.  Finance Co. of Am. v. BankAmerica Corp., 502 F. Supp. 593, 595-96 (D. Md. 1980) (finding five-year delay not unreasonable given that defendant was on notice as a result of plaintiff's application to register the mark);  Perini Corp. v. Perini Const., Inc., 715 F. Supp. 719, 724 (D. Md. 1989), rev'd on other grounds, 915 F.2d 121 (4th Cir. 1990) (finding two-year delay "not inexcusable").  "[H]aving failed to demonstrate that the undisputed facts establish the defense of laches, on which it has the burden of persuasion," Vantage Travel's motion for summary judgment on this basis is denied.  U.S. Olympic Committee v. Olympic Supply, Inc., 655 F. Supp. 2d 599, 605 (D. Md. 2009).

### E.  Standing for Common Law Trademark Infringement Claim

Although ownership is not required to assert a claim under 15 U.S.C. § 1125(a), ownership is required to "have standing to seek relief for common law trademark infringement." Quabaug Rubber Co. v. Fabiano Shoe Co., Inc., 567 F.2d 154, 160 (1st Cir.  1977) (noting that "one need not be the owner of a federally registered trademark to have standing" to sue under § 1125(a)); Hot Stuff Foods, LLC v. Mean Gene's Enterprises, Inc., 468 F. Supp. 2d 1078, 1094 (D.S.D. 2006) (explaining that under common law, only the owner of a trademark has standing to seek relief for infringement); Carmona v. Carmona, Civil Action No. H-06-0228, 2007 WL 543438, at *3 (S.D.Tex. Feb. 16, 2007) ("The first element of a common law trademark infringement claim requires Plaintiff to prove that he owns the mark in dispute." (citing Emergency One, Inc. v. Am. Fire Eagle Engine Co., Inc., 332 F.3d 264, 267 (4th Cir. 2003))). Vantage concedes that it is not the owner of the VANTAGE Mark, but is a former licensee. Vicario, a nonparty, is the owner of the VANTAGE Mark.  (Def. Mem. Supp. Summ. J. Ex. A (Vicario Dep. 66).)  Based on the foregoing, Vantage Travel is entitled to summary judgment on Vantage's common law trademark infringement claim.

Therefore, it is

**ORDERED** that Vantage Travel's motion for summary judgment, docket number 49, is granted in part and denied in part.

**IT IS SO ORDERED**.

s/Henry M. Herlong, Jr.
Senior United States District Judge

Greenville, South Carolina
April 8, 2010